UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| TERON FRANKLIN, | Case No. 3:18-cv-00150-MMD-CLB |
| --- | --- |
| Petitioner, | ORDER |
| v. | |
| TIMOTHY FILSON, *et al.*, | |
| Respondents. | |

Teron Franklin's 28 U.S.C. § 2254 petition for writ of habeas corpus is before the court for final disposition on the merits. (ECF No. 17.) As discussed below, the petition is denied.

**I.   PROCEDURAL HISTORY AND BACKGROUND**

In January 2012, a jury convicted Franklin of battery causing substantial bodily harm. (Exhibit "Exh." 22.)[1] The state district court adjudicated him a habitual offender and sentenced him to life in prison without the possibility of parole. (Exh. 24.) Judgment of conviction was filed on March 19, 2012. (Exh. 25.) The Nevada Supreme Court affirmed Franklin's convictions in September 2013, and the Nevada Court of Appeals affirmed the denial of his state postconviction habeas corpus petition in February 2018. (Exhs. 55, 103.)

Franklin's federal petition sets forth three grounds for relief based on ineffective assistance of counsel. (ECF No. 17.) Respondents have answered the petition, and Franklin replied. (ECF Nos. 35, 42.)

///

///

---

[1]Exhibits referenced in this order are exhibits to the first-amended petition, ECF No. 17, and are found at ECF Nos. 27-32.

## II. LEGAL STANDARDS

### a. AEDPA Standard of Review

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). The Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court]

2

and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *See Cullen*, 563 U.S. at 181.

3

### b. Ineffective Assistance of Counsel

Franklin asserts three grounds of ineffective assistance of counsel ("IAC"). Such claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *See id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *See id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable

4

application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *See Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

///

### III. TRIAL TESTIMONY OF VICTIM AND FRANKLIN

Michelle Winship's mother, Sharon Ford, testified that on the day in question, Winship and Franklin were in Ford's apartment, and Franklin was trying to get Winship to give him a ride. (Exh. 106 at 125-183.) Winship refused, and they got into a heated argument. Franklin then grabbed Winship by the hair, dragged her out of the house, and threw her on the ground. He picked up Winship's son's bike and threw it on top of her. He then started kicking her repeatedly in the head and body.

Michelle Winship testified that when Franklin threw the bike on her, it broke two bones in her arm. (*Id.* at 184-261.) She had surgery a couple of days later; doctors placed titanium plates in her arm, and she had 18 staples. She stated that her arm was fine before the incident, but now she can hardly lift anything, and her fingertips are still numb. She said that after the incident Franklin called her several times and urged and threatened her not to testify against him. Winship testified that she was not involved in any other physical altercation around the time that Franklin injured her. She acknowledged that she remained in contact with Franklin after the incident and that they would spend time together and get high together.

Franklin testified that on the day in question there was no bicycle in front of Ford's apartment. (Exh. 19 at 63-150.) He agreed that he and Winship argued because she refused to give him a ride. He said he threw some pills that Winship was counting down the kitchen garbage disposal and then she became belligerent and was trying to push him out the front door. He testified that he had his back to the front door threshold and as she was shoving him, they both fell backwards down the steps. Franklin said he pushed Winship off of him and as he was getting up, she was holding on to his leg and pulling. He said that after that he walked to Winship's apartment, which was in the same complex, collected his things, and left on foot.

///

///

6

## IV. FRANKLIN'S PETITION

### a. Ground 1

Franklin contends that his trial counsel, Gemma Waldron, was ineffective for failing to communicate a plea offer (ECF No. 17 at 13-17).[2] The State offered a plea deal of domestic battery causing substantial bodily harm—with a sentence range of 1 to 5 years—with no habitual criminal enhancement. Franklin asserts that his counsel did not inform him of the proffered deal until after the offer expired.

Sean Sullivan, a deputy public defender, testified that he appeared at an October 11, 2011, hearing on behalf of Franklin. (Exh. 87 at 19-33.) He explained that he was not actually assigned to the case but was covering for his colleague Theresa Ristenpart. Sullivan testified that the State offered a plea deal of domestic violence causing substantial bodily harm and the State would concur with the Division of Parole and Probation at the time of sentencing and not pursue habitual criminal treatment. Sullivan stated that Franklin rejected the offer; the only offer that Franklin was willing to accept was for a misdemeanor. At the time, the victim was not cooperating with the State, and Franklin also maintained his innocence. Sullivan testified that he advised Franklin that a habitual criminal adjudication could result in a sentence of life without parole:

> It's my custom, habit and practice, whenever the habitual is being alleged or possibly alleged by the State, to go through the statute and go through their criminal history and then talk about the possibilities.
>
> But I always make sure that this isn't like a three strikes and you are out, like other jurisdictions. The judge has that broadest kind of discretion to impose habitual or adjudicate habitual or not adjudicate habitual.
>
> So that's my custom, habit and practice, and that's what I believe that we discussed.

(*Id.* at 31-32.)

---

[2]Waldron passed away in 2014, after the trial and sentencing and before the evidentiary hearing on Franklin's state postconviction habeas petition. (*See*, *e.g.*, ECF No. 35 at 6; Exh. 66 at 9.)

7

Theresa Ristenpart testified that she was the public defender assigned to Franklin's case early in the proceedings before her office was conflicted out. (Exh. 87 at 65-80.) She had discussed with Franklin the offer to plead to the charge, with no habitual criminal; he rejected the offer. She stated that when she spoke with the victim, the victim told her that she had been drinking all day and was on medication, and she either fell over the bike or couldn't remember. Ristenpart said that she was aware that the State could potentially pursue habitual criminal treatment and that she discussed that with Franklin along with the possible sentences.

Elliott Sattler testified that he was the deputy district attorney that prosecuted Franklin. (Exh. 87 at 34-62.) Evidence was presented that the district attorney sent an email to Waldron on January 18, 2012, with the same offer—plead guilty to domestic violence causing substantial bodily harm and the State would not seek habitual criminal treatment. The offer was set to expire on January 23, and trial was set for January 30.

Franklin testified that he had discussed the offer to plead to the charge with Sullivan. (Exh. 87 at 80-167.) On cross-examination Franklin stated that he and Sullivan went back and forth about different possibilities for a plea deal, including pleading to a misdemeanor and a deal that included being released on his own recognizance. Waldron ultimately represented Franklin at trial. Franklin testified that when he met with Waldron on January 21, she told him that the State was going to seek habitual criminal treatment. He insisted at the evidentiary hearing that he did not know until the beginning of the trial on January 30 that he faced a potential life without parole sentence if he were adjudicated a habitual offender. But he also testified that he did not know of that possibility until sentencing. He also equivocated when asked whether Waldron conveyed the plea offer to him before it expired, whether he understood the consequences of the deal, and whether he would have agreed to the plea deal. (*See id.* at 108-113.)

The Nevada Court of Appeals affirmed the denial of this claim in Franklin's state postconviction petition:

> First, Franklin argued that counsel failed to communicate the State's final guilty plea offer until after it had already expired. The district court found Franklin was not credible and, accordingly, Franklin failed to demonstrate by a preponderance of the evidence that counsel failed to communicate the offer, or he would have accepted it. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) (holding counsel is deficient when she fails to timely communicate a favorable guilty plea offer and petitioner is prejudiced when he demonstrates a reasonable probability he would have accepted the offer, it would have been entered without the State rescinding it or the trial court rejecting it, and it was more favorable than the trial outcome). The district court's findings are supported by the record and are not clearly wrong. We therefore conclude the district court did not err by denying this claim.

(Exh. 103 at 3.)

Franklin's testimony at the evidentiary hearing was inconsistent. Two of his attorneys testified that they advised him of the potential sentences, and Franklin acknowledged that his trial attorney also advised him of the possible sentences. Franklin has failed to demonstrate that counsel did not communicate the offer or that he would have accepted it. He has not shown that the Nevada Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 1.

### b.  Ground 2

Franklin next argues that Waldron was ineffective in violation of his Sixth and Fourteenth Amendment rights because she failed to understand the charges against Franklin. (ECF No. 17 at 17-19.) Franklin asserts that his counsel informed him that he could not be convicted of a felony because this conviction would have had to have been his third domestic battery offense, but Franklin had no prior domestic battery offenses. Franklin contends that after the State filed the notice in the Amended Information that it was seeking habitual criminal treatment, his counsel told him he could not get habitual treatment because he was only charged with a misdemeanor. Franklin further claims that counsel represented to him that the possible habitual sentences were 10 years to life or a term of 10 to 25 years.

///

Ristenpart, who represented Franklin before her office identified a conflict of interest, testified at the state evidentiary hearing about the charges:

> Q: 200.485 is the domestic battery statute.
>
> A: Yes, that was his original charge.
>
> Q: And so was it your understanding the State was pursuing because they thought he had two prior misdemeanor domestic battery convictions?
>
> A: No, it's because the -- causing substantial bodily harm.
>
> Q: And are you aware of a statute that requires a domestic relationship for a battery causing substantial bodily harm conviction?
>
> A: Correct. So they have to establish there's a domestic relationship, as well as that a battery occurred causing substantial bodily harm. So I think I know your next question, but I'll wait for it.
>
> Q: So were you put on notice by any of the charging documents you saw that the State was alleging a domestic battery causing substantial bodily harm using all three statutes, 200.481, 33.018 and 200.485?
>
> A: Correct.
> In fact, it was on a mandatory status conference sheet that it was a domestic battery causing. And that was part of the issue in our potential defense, because maybe who could establish it was domestic besides the alleged victim.

(Exh. 87 at 72-73.)

The prosecutor also testified that there was nothing to suggest that trial counsel was confused about the charges:

> Q: Did Ms. Waldron discuss with you that she didn't believe Mr. Franklin could commit a felony because this was not his third-time domestic battery?
>
> A: No, I don't remember her discussing that with me at all, because the charge was domestic battery causing substantial bodily harm. And so it's not predicated on two prior misdemeanor convictions, it's based on the substantial bodily harm. So I don't remember her discussing that with me. But if she would have, I would have simply said it's a felony because of the substantial bodily harm.

(*Id.* at 45.)

Rejecting this claim, the Nevada Court of Appeals reasoned:

> The district court found counsel questioned prospective jurors, made an opening statement, cross-examined witnesses, and made closing arguments. These findings of active participation at trial are supported by the record and are not clearly wrong, and they thus belie Franklin's claim. . . .
>
> The district court found counsel engaged in detailed cross-examination of witnesses and argued the relevant facts and law in closing arguments, both of which demonstrated her preparation for trial. These findings are supported by the record and are not clearly wrong. . . .
>
> Franklin argued counsel did not understand the factual or legal basis of his case and told him a felony conviction—and thus habitual criminal treatment—was impossible. The district court found Franklin was not credible and counsel's actions at trial, summarized above, demonstrated her understanding of the case. These findings ae supported by the record and are not clearly wrong. We therefore conclude the district court did not err by denying this claim.

(Exh. 103 at 4.)

The Court has reviewed the state-court record, which supports the state district court's assessment of defense counsel's performance at trial and belies Franklin's contentions that counsel was uninformed and ill-prepared. Accordingly, Franklin has not shown that the Nevada Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d). Ground 2 is, therefore, denied.

### c. Ground 3

Franklin then claims that his trial counsel was ineffective because she had previously prosecuted him, creating an actual conflict of interest and depriving him of his Sixth and Fourteenth Amendment rights to effective assistance of counsel. (ECF No. 17at 20-21.) Franklin contends that county district attorney records indicate that Waldron was the deputy district attorney assigned to prosecute him for false imprisonment and domestic battery in 2002. The cases, which listed the defendant as William Johnson, a

11

pseudonym Franklin used, were dismissed two weeks after they were filed due to the unavailability of witnesses. (*See* Exh. 66 at 18, 34-35.) Franklin argues that this alleged conflict meant that he was essentially without counsel at trial and sentencing. *See, e.g., U.S. v. Chronic*, 466 U.S. 648 (1984); *White v. Maryland*, 373 U.S. 59 (1963).

The Sixth Amendment right to counsel encompasses a right to representation free from conflicts of interest. *See Lewis v. Mayle*, 391 F.3d 989, 995 (9th Cir. 2004). With respect to a breakdown in the attorney-client relationship, the Supreme Court has made it clear that the Sixth Amendment guarantee of counsel does not guarantee a meaningful attorney-client relationship. *See Morris v. Slappy*, 461 U.S. 1, 14 (1983).

The Nevada Court of Appeals explained:

> Franklin argued counsel suffered from an actual conflict of interest. A petitioner who demonstrates an actual conflict has adversely affected counsel's performance has satisfied *Strickland's* deficiency prong, and we presume prejudice. *See Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980); *Clark v. State*, 831 P.2d 1374, 1376 (Nev. 1992). "[A] conflict exists when an attorney is placed in a situation conducive to divided loyalties." *Clark*, 831 P.2d at 1376 (quoting *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991)).
>
> Franklin claimed counsel's conflict stemmed from her prosecution of him in two 2002 cases when she was a deputy district attorney. Franklin failed to demonstrate divided loyalties. First, we note the record does not demonstrate counsel was aware she had been assigned to Franklin's prior cases. Both of the 2002 cases were dismissed two weeks after the criminal complaint was filed due to witness unavailability, and in both cases, Franklin was prosecuted under a pseudonym. And Franklin did not demonstrate how counsel could feel a loyalty to a case of which she was unaware. Second, Franklin did not demonstrate the alleged conflict had any bearing on counsel's performance, adverse or otherwise. Finally, Franklin neither alleged nor demonstrated the 2002 cases and the instant case were substantially related or involved the revelation of privileged communications. *See Maiden v. Bunnell*, 35 F.3d 477, 480 (9th Cir. 1994) ("In cases of successive representation, conflicts of interests may arise if the cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalties." (internal quotation marks omitted)). We therefore conclude the district court did not err by denying this claim.

(Exh. 103 at 4-5.)

This claim is meritless. Franklin presents nothing to indicate that his counsel was even aware that she had been briefly assigned to prosecute him a decade earlier in two cases in which he was prosecuted under a pseudonym. Franklin has not demonstrated that the Nevada Court of Appeal's decision was contrary to or involved an unreasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 3.

Accordingly, the petition is denied in its entirety.

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability ("COA"). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *See id.*

Having reviewed its determinations and rulings in adjudicating Franklin's petition, the Court finds that none of those rulings meets the *Slack* standard. The Court therefore declines to issue a certificate of appealability for its resolution of Franklin's petition.

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and has determined they do not affect the outcome of the issues before the Court.

It is therefore ordered that the amended petition (ECF No. 17) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 2nd Day of December 2021.

_____
MIRANDA M. DU, CHIEF JUDGE
UNITED STATES DISTRICT COURT

14